No. 13,315.

OBERTO *v.* MOORE.
(23 P. [2d] 578)

Decided June 26, 1933.

Messrs. BURGESS & ADAMS, for plaintiff in error.

Messrs. BRYANT & STUBBS, for defendant in error.

*En Banc.*

MR. JUSTICE BOUCK delivered the opinion of the court.

THIS case is brought here under our rule 18 for review of an order of the district court appointing a receiver. The plaintiff in error, Oberto, defendant below, and the defendant in error, Moore, plaintiff below, are the equally interested copartners constituting a partnership

which owns extensive mines and mining property in San Miguel and Ouray counties purchased in April, 1927, from the Tomboy Gold Mines Company, Limited. The purchaser was a partnership consisting of Oberto, Moore and one Tidd. The interest of the last named was later purchased by Oberto.

The three partners had entered on April 27, 1927, into a written partnership agreement, by which the management of the partnership affairs was entrusted to Oberto, who acted as manager from then on. On July 25, 1932, Oberto and Moore entered into another written agreement which contains the following provisions: ''The first party [Oberto] is hereby invested with the care and management of said property, and he shall keep true and just books of account, wherein shall be entered and set down all income and disbursements of every kind relating to the business of this partnership, and second party [Moore] shall have full and free access to said books and papers of the partnership at all times. In the event the second party becomes dissatisfied with the method and manner of the care and management of said property by first party, the care and management thereof and the keeping of said partnership books shall be delegated to some third person appointed by arbitrators in manner and form as hereinafter set forth. * * * In the event a disagreement arises over the interpretation of any clause in this agreement or over any matter or thing arising out of this agreement, which shall expressly include a disagreement between the parties as to the amount and terms for the sale price of all of said partnership property or lease thereof, such matter or matters shall be referred to three arbitrators, one to be chosen by the first party, one by the second party, and the two so chosen shall select a third person who shall be disinterested, and the decision of such disputed matter submitted to such arbitrators, pursuant to the provisions of chapter 27, sections 314 to 320 inclusive, of the Code of Civil Procedure of Colorado, as set forth in Compiled Laws of

Colorado of 1921, it being intended hereby to provide for a statutory and not a common law arbitration.''

The agreement of 1932 expressly provides that the agreement of 1927 should be deemed cancelled upon payment by Moore of a certain sum due Oberto as the purchase price of one-half the Tidd interest previously purchased by Oberto. The sum was duly paid, making the two men equal copartners. Oberto continued as manager in accordance with the second agreement.

April 19, 1933, Moore filed at Telluride a suit for dissolution of the partnership, for an accounting, and for the appointment of a receiver. On the same day Oberto was served with a summons, to which was attached a copy of the complaint. At the same time he was served with a notice that the plaintiff would call up for hearing before the district judge in Montrose, about 70 miles away, at 10:00 a. m. on Friday, April 21, ''his motion, on file herein, for the appointment of a receiver''; which notice stated that the ''plaintiff will rely upon the allegations contained in his complaint on file herein and such oral and documentary evidence as shall be required in support thereof.'' No copy of the motion was delivered to Oberto, simply a copy of the notice. The motion, it appears, directly asks that Moore himself be made receiver.

The next morning, April 20, Oberto telephoned his attorneys, who reside in Grand Junction, over 70 miles from Montrose in the opposite direction from Telluride, and reported developments. He had promptly mailed out to them the papers he received. The attorneys immediately mailed a letter to the district judge, telling him of the telephone interview with Oberto and that they expected to get the papers that night. The letter further informed him that they would not be able to appear before him the following day to resist the application, that the time was too short to prepare for such a hearing, and that they would file an answer as promptly as possible; but they made it clear that they neither consented

to the appointment of a receiver nor waived any of Oberto's legal rights.

The hearing was had at the designated time and place, and in the absence of Oberto and his attorneys. At the close an order was entered appointing as "temporary receiver" the plaintiff copartner Moore. It was further ordered that the defendant copartner Oberto be cited to *"show cause"* in Montrose on April 29, 1933, "why said appointment of said temporary receiver should not be made permanent, and why the said * * * Moore should not be appointed receiver * * * with the usual powers and duties." The order also stated that "the purpose of this order is to place the receiver named in complete charge and control of the property, under bond, to conserve all the assets and to assemble those not in evidence, if he can find them; but without authority to sell or dispose of the property * * * without the consent of the other party in the enterprise or without an order of court, *allowing the defendant through his counsel full opportunity on the day and date named herein to show cause, if they have any good cause, why this order should be vacated, and if without cause, then to make this order permanent under the receiver named."* (The italics are ours.)

On the return day of the citation, accordingly, the matter again came up. Oberto's attorneys had meanwhile filed a demurrer challenging the complaint both on the general ground of insufficient facts and on the special ground that the complaint shows on its face that plaintiff had made no effort to arbitrate the partnership differences, as provided in the partnership contract; and they also filed a motion to vacate the order appointing the temporary receiver and to require redelivery to Oberto of the partnership property taken from the latter by virtue of the order, counsel alleging their ground to be that the complaint showed the court lacked jurisdiction to appoint.

No evidence was taken. Arguments were had on the

demurrer, which was overruled, and on the motion, which was denied. The record establishes the fact that Oberto's counsel consistently and emphatically objected at every available time and place.

█ 1. The appointment of the plaintiff copartner as temporary receiver was improvident. As a general rule, a receivership should not be created unless upon notice that gives ample time for all interested parties to attend and be heard. If there be exceptional cases that require ex parte action, they are limited to momentous emergencies which manifestly threaten dire destruction of health, safety, or irretrievable estate. There was no such exigency here. No claim is put forth that Oberto was insolvent, and under the contract he, as the managing partner authorized to sell all the assets at not less than a stated minimum of $100,000, was entitled to possession, which nothing short of clear and convincing proof of fraud or misconduct, together with imminent danger to the assets, or else insolvency coupled with substantial waste, could properly forfeit. The drastic remedy of receivership among partners ought to be avoided whenever possible. 2 Clark on Receivers (2d Ed.), section 919; High on Receivers (4th Ed.), section 516. The evidence at the ex parte hearing was plainly insufficient. Moore had been in partnership with Oberto on practically the same basis for the six preceding years, and Oberto's limitations as an accountant and scholar were no novelty to either of the two men.

█ 2. The issuance of a citation, requiring Oberto to show cause why the ex parte appointment should not be made permanent, did not cure the vital defect in that appointment. It emphasized it. We cannot approve of this anomalous method of radically interfering with the contractual rights of partners when the one injured thereby has not had his day in court. To throw upon him the burden of proving the impropriety of the initial action, under penalty of being effectually ousted if he does not take up the burden, is inconsistent with our concep-

tion of both the principles that ought to govern receiverships and those that underlie partnerships. All the more true is this where, as here, the partners have indicated a preference for amicable settlement of any differences that might arise between them, and for arbitration instead of contests in court.

3. In view of the conclusions we have above expressed, it is unnecessary at this time to decide whether Oberto is right in claiming that he can demand arbitration under the contract, or whether Moore is right in contending the contrary on the ground that the partnership agreement failed to name specifically the arbitrators who would represent the respective partners. What we might say on that subject would be mere dictum. That issue may be litigated in the main case if the parties so desire.

The orders appointing Moore as temporary receiver and as permanent receiver must be reversed, and the lower court directed to vacate both orders in their entirety, and to order possession of the partnership property to be restored to Oberto.

Orders appointing the temporary and the permanent receiver reversed, with directions.

Mr. Justice Moore not participating.