No. 12,555.

FIDELITY BOND AND MORTGAGE COMPANY v. PAUL.

(6 P. [2d] 462)

Decided December 21, 1931.

Messrs. BARTELS & BLOOD, for plaintiff in error.

Mr. PHILIP HORNBEIN, for defendant in error.

*In Department.*

MR. JUSTICE BUTLER delivered the opinion of the court.

MURIEL Paul, called herein the plaintiff, sued the Cosmopolitan Hotel and Broadway Theatre Company and the Fidelity Bond and Mortgage Company to reform a lease, and for an injunction. A decree was entered as prayed for. The mortgage company alone complains of the decree.

On December 1, 1924, the then owner of certain real estate executed a mortgage to a trustee to secure the payment of certain bonds and also to secure the mortgage company, who had guaranteed the payment of the bonds. The next day the mortgaged property was conveyed to the hotel company subject to the mortgage, which the hotel company assumed. A hotel was operated upon the property. On April 2, 1926, the hotel company leased to the plaintiff and another two rooms in the hotel, to be used as a beauty parlor. On September 1, 1926, the plaintiff's partner having withdrawn from the business,

another lease on the same terms was obtained by the plaintiff. The lease was for five years. Each of the two leases provided that "all charges for * * * lighting" the premises "shall be paid by said lessor." The leased premises were lighted by electricity carried over one wire. There was no meter.

The overwhelming weight of the evidence supports the finding of the trial court that the agreement was that, in consideration of the payment of the rent, the plaintiff should not only have the right to use the electricity for lighting purposes, but also, without any additional charge, to use it for power purposes in connection with her business, and that it was by mistake and inadvertence of the scrivener that the lease did not fully express the agreement. After the lease was executed and as long as the lessor retained ownership and remained in possession of the property, that is to say from April 2, 1926, until January 1, 1928, the agreement was carried out according to its spirit and intent.

The mortgage pledged the rents as additional security. It provided also that upon default the mortgagor should surrender possession of the mortgaged property to the mortgage company; and further, that the mortgage company should have authority to make all necessary repairs, etc., at the expense of the mortgagor, "and to do any and all things necessary in the operation and management of said property to all intents and purposes the same as grantors might or should do; * * * and to receive the rents, incomes, issues and profits of said property, and to pay therefrom" the expenses of holding and managing the property, and to apply any remaining balance upon the indebtedness.

On January 1, 1928, pursuant to the foregoing provisions, the hotel company delivered possession to the mortgage company. The latter company thereafter conducted the hotel business. The plaintiff paid to the mortgage company the rent for January, February and March, 1928, and continued to use the electricity for

power purposes without any objection until some time in March, when the mortgage company installed a separate wire to carry electricity for power purposes and a meter to measure the electricity so used. On April 1 the mortgage company presented to the plaintiff a bill for the electricity used for power purposes in March, and threatened to cut off the power unless the bill was paid. The plaintiff sued for a reformation of the lease so as to make it express the actual agreement of the parties, and to enjoin interference with her use of the electricity for power purposes.

Under the findings of the court, amply supported by the evidence, the right to such relief as against the hotel company is clear; but the mortgage company contends that it occupies a more favorable position than the hotel company.

Counsel for the mortgage company contend that it was not bound by the terms of any lease given by the hotel company to the plaintiff, for the reason that such lease terminated upon the mortgage company's taking possession of the property. On the other hand, counsel for the plaintiff contends that, under the law, upon the mortgage company's taking possession, the lease did not ipso facto terminate, but that the company had the election to terminate the lease or to ratify it and thereby continue it in force, and that the evidence shows that it did ratify the lease with knowledge of the real agreement as plaintiff claims it was. Both sides review the authorities with reference to the rights of a mortgagee, upon entry for condition broken, as against a tenant under a lease given after the mortgage was executed. Those authorities, however, discuss the rule in jurisdictions where a mortgage passes title and the mortgagee is entitled to enter into possession upon breach of conditions. Such authorities have no application in this state, where a mortgage merely creates a lien and does not confer right of entry upon breach of condition.

Section 281, Code of Civil Procedure, provides

that, "A mortgage of real property shall not be deemed a conveyance, whatever its terms, so as to enable the owner of the mortgage to recover possession of the real property without foreclosure and sale." That section deprives the mortgage of its common-law character, and the mortgagee of all possession and right of possession, before or after condition broken, until after foreclosure and sale. *Moncrieff v. Hare,* 38 Colo. 221, 87 Pac. 1082, 7 L. R. A. (N. S.) 1001.

██ Where, as in the present case, the mortgagor assigns the rent to the mortgagee and voluntarily places the mortgagee in possession with power to do all things necessary in the operation and management of the property the same as the mortgagor might do, the mortgagee stands in the shoes of the mortgagor. The lease remains unaffected by the assignment and the change of possession, save only as to the person entitled to receive the rent. By that transaction the mortgage company acquired no better or greater right with reference to either the lease or the lessee than the hotel company had previously enjoyed. The lease, having been given after the mortgage, is subject thereto; but the lease cannot be terminated, without the lessee's consent or for breach of some condition in the lease, except by foreclosure sale and deed.

The plaintiff was entitled to relief against both the hotel company and the mortgage company. The district court was right in granting the relief sought.

The judgment is affirmed.

MR. CHIEF JUSTICE ADAMS, MR. JUSTICE MOORE and MR. JUSTICE BURKE concur.